**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

GARY MICHAEL KING,

               Plaintiff,

               v.

REV. WARREN WILCOX, *Supervisor of Chaplaincy*, *et al.*,

               Defendants.

Civil Action No.: 25-2249 (ES)

OPINION

**SALAS, DISTRICT JUDGE**

Before the Court is the civil rights complaint submitted by *pro se* plaintiff Gary Michael King ("Plaintiff"), a convicted and sentenced state prisoner incarcerated at Garden State Correctional Facility ("GSCF") in Yardville, New Jersey. (D.E. No. 1 ("Complaint")). Plaintiff has also filed a motion to reopen, (D.E. No. 7 ("Motion to Reopen")), and an application to proceed *in forma pauperis* ("IFP"), (D.E. No. 8 ("IFP Application")).

The Court **GRANTS** Plaintiff's IFP Application. His Complaint is now subject to screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and 42 U.S.C. § 1997e(c) to determine whether the Court should dismiss the pleading as frivolous or malicious, for failure to state a claim upon which the Court may grant relief, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons set forth below, the Court concludes, with the following caveats, that dismissal of the entire matter is not warranted at this early stage of the proceeding.

## I.    BACKGROUND

In his Complaint, Plaintiff lists the following six "defendant[s]": (i) Warren Wilcox, "Supervisor of Chaplaincy" at GSCF; (ii) C. Horsey, GSCF "Mail Room SCPO Officer, Badge # 5264;" (iii) Sergeant ("Sgt.") Jones, GSCF "Mail Room Sgt.;" (iv) Milligam, GSCF "Asst Superintendent;" (v) M. Renaud, GSCF "Administration Asst.;" and (vi) D. Henderson, GSCF "Administration."  (Compl. at 3–6).

According to Plaintiff, on September 1, 2024, Plaintiff sent an inquiry to Wilcox requesting a meeting to discuss religious accommodations.  (*Id.* at 7).  On October 9, 2024, he met with Wilcox.  (*Id.*).  Plaintiff told Wilcox he is Native American and would like to order "sacred[1] spiritual items" so he could perform Native American religious ceremonies.  (*Id.*).  Plaintiff told the chaplain he "can look up the [Protocols PCS.002.REL.004 Native American Guidelines to Practices and Pray]," and Wilcox responded that he has twenty-four years of experience and he knew about the protocols.  (*Id.*).  Wilcox gave Plaintiff Wilcox's email address for Plaintiff to pass on to Plaintiff's wife.  (*Id.*).

Plaintiff's wife did not have the money to send the items immediately.  (*Id.*).  It appears that, in March 2025, she sent to Wilcox a screenshot from a Native American company providing religious items indicating that a package was sent, addressed to "C/O Care of Rev Warren Wilcox to Gary King SBI #234301G," and that the package was delivered on March 11, 2025.  (*Id.* at 8 (further listing tracking number)).  Wilcox did not respond to the screenshot.  (*Id.*).  Plaintiff wrote to Wilcox on March 13, 2025, again with no response.  (*Id.*).  He wrote again on March 16, 2025, and, on March 19, 2025, Wilcox informed Plaintiff that he attempted to retrieve the package from the Mail Room.  (*Id.*).  However, "they" told the chaplain that the wrong name was on the package,

---

[1]    Plaintiff consistently spells "sacred" as "scared."  The Court has corrected the misspellings.

and Wilcox then asked Sgt. Jones to talk to "Administration D. Henderson" to release the package. (*Id.*). Plaintiff wrote to the Mail Room and additionally asked his wife if his full name appeared on the package. (*Id.*). She sent her husband the invoice confirming that his full name was on the package (with a tracking number) and sent Wilcox a screenshot. (*Id.* at 8–9). On March 16, 2025, Plaintiff wrote to the Mail Room and received no response. (*Id.* at 9). He accordingly submitted "a grievance on [the] Mail Room," citing to "IMP PCS.002.REL.004.Native American Guidelines." (*Id.*).

Plaintiff alleges that he told Wilcox that the package contained a sacred ceremonial pipe, kinnikinnick tobacco, Indian tobacco, a sacred eagle feather, an abalone shell for smudging, and buck skin splits to wrap the pipe and bowl separately. (*Id.*). Wilcox responded "okay," indicating that these items are mentioned in the "IMPs." (*Id.*). The IMPs also allegedly state that females cannot touch the pipe or other items. (*Id.*). However, "C. Horsey sent Plaintiff [a] contraband slip. They touched those items, which is also a violation [of] Plaintiff's religion. The only one that's suppose[d] to touch everything is Plaintiff." (*Id.*). Specifically, SCPO C. Horsey (Badge # 5264) sent Plaintiff a written contraband slip, completed on March 14, 2025, and received by Plaintiff on March 19, 2025, "which would be written on the united log book, which stated that they other then the Rev. opened the package." (*Id.* (quoting verbatim)). The IMPs also state that Wilcox should give the package to Plaintiff and that Plaintiff then opens the items in the chaplain's presence. (*Id.* at 10).

On March 16, 2025, Plaintiff wrote to the Mail Room, and he did not receive a response. (*Id.*). Wilcox stated that he asked Sgt. Jones to speak to Henderson about releasing the package to the chaplain. (*Id.*). According to Plaintiff, this request was denied. (*Id.*). Plaintiff "placed a

grievance on the mailroom and on the Admin.," claiming violations of his rights and religious discrimination. (*Id.*).

On March 19, 2025, Plaintiff drafted a handwritten appeal to Milligam, "explaining thru the IMP, and through Native American religion females are not allowed to touch a Native American sacred spiritual items" and "[t]hat's on the I.M.P. for Native American practices." (*Id.* at 10–11 (quoting verbatim)). "M. Renaud Asst Admin responded talking package procedures, when in fact they should be following the Native American package IMP practices." (*Id.* at 11).

With respect to the alleged involvement of the six Defendants, Plaintiff alleges the following as to Wilcox: "Protocol of PCS.002.Rel.004.Native American Religion Guidelines Practices of Our Religion and PCS.002.REL.004.NATAM.002.Native American Sweatlodge Ceremonies." (*Id.* at 3). Wilcox allegedly instructed Plaintiff's wife to send him screenshots from the Native American company and did not pick up the items from the Mail Room, "not allowing Plaintiff to pray[ ]" after telling the wife to pay for the items (which cost over $200). (*Id.*).

With respect to Horsey (an officer working in the Mail Room), Plaintiff alleges that the package was received on March 11, 2025, at 4:33 a.m., Horsey did not follow "the (IMP) PCS.002.REL.004 Native American Religion Guidelines for Native American Practices and Seizure" because Horsey failed to give the package to Wilcox (and the package was addressed to Plaintiff c/o Wilcox) and the chaplain showed Horsey "proof of Plaintiff allowed to pray Plaintiff assumes." (*Id.* at 4 (quoting verbatim)). Likewise, Wilcox allegedly spoke to Sgt. Jones (the Mail Room Sergeant), showing him the wife's screenshots and the "IMP Native American Rules," but

4

Sgt. Jones still failed to adhere to the state protocols and Plaintiff thereby was not allowed to perform religious ceremonies. (*Id.*).

Plaintiff alleges that he wrote to Milligam (the Assistant Superintendent) on March 15, 2025 (which Milligam received on March 19, 2025), and he drafted a handwritten appeal on March 19, 2025, regarding the "IMPS." (*Id.* at 4–5). The submissions were denied, and Milligam refused to respond, which constitutes "nothing but discrimination against Native American[s] when the Guidelines is in writ[ing] ordered by a Judge."[2] (*Id.* at 5). "When Plaintiff sen[t] a handwritten appeal/letter to Milligam, the Superintendent, the Plaintiff wrote a JPay as well and M. Renaud [Administration Assistant] responded for Milligam stating they are following package procedures." (*Id.*). Plaintiff wrote that they should be following the Native American procedures for Native American packages (PCS.002.REL.004.Native American Religion Guidelines Practices of Our Religion and PCS.002.REL.004 NATAM.002.Native American Sweatlodge Ceremonies). (*Id.*). With respect to the sixth (and final) Defendant (D. Henderson, Administration), Plaintiff alleges that he wrote to the administration explaining everything, the administrative remedies he had exhausted, the discrimination he suffered because he is Native American, "that [he has] a package here that are [sic] highly sacred to [him] as a Native American," the "IMPs," and the fact that the items could spoil. (*Id.* at 6). However, Henderson closed the inquiry. (*Id.*).

Plaintiff alleges that "[t]hrough all this not being able to pray." (*Id.* (quoting verbatim)). He specifically claims that, as a result, on January 2, 2025, Plaintiff's wife "lost our child" in the seventh month of pregnancy in premature labor. (*Id.* at 11). The wife's mother died the following week, and her grandmother died during the second week of January 2025. (*Id.*). According to

---

[2]    According to Plaintiff, a court ordered the State of New Jersey to comply with the state protocols/IMPs (PCS.022REL.004.Native American Guidelines to Practices and IMP.PCS.002.Rel.004.NATAM.002.Native American Sweatlodge Ceremonies). (Compl. at 2).

Plaintiff, "[a]bandonment, violence, abuse and neglect are the norm lacking any exposure to religion let alone a solid grounding in a particular [illegible word and question mark] access to qualified religious provider of [his] own faith." (*Id.* (quoting verbatim)). Plaintiff seeks "injunctive relief and damages attempting to protect [his] religious liberty when plaintiff sees every other religious groups [to] be able to pray and this plaintiff cant." (*Id.* (quoting verbatim)).

In addition, Plaintiff requests: (i) an order requiring prison authorities to adhere to state protocols and respect "other people's religious rights," including Native Americans' rights to pray, and ensuring that Native Americans are able to perform religious ceremonies in state correctional institutions and redress for Plaintiff's lack of access to "individual spiritual prayers," stress, depression, and weight loss; (ii) that Defendants are disciplined for "violating when its ordered from a Judge to do so" ("This is a counter lawsuit to the one we won in 2007 for us to be able to have the right to pray and have sweat lodges"); and (iii) $500,000 in damages. (*Id.* at 11–12 (quoting verbatim)).

On or about March 28, 2025,[3] Plaintiff submitted his Complaint, (D.E. No. 1), and an IFP application, (D.E. No. 1-2). On April 21, 2025, the Court administratively terminated this case because Plaintiff had neither paid the full fee nor filed the required certified prison account statement and ordered that, if Plaintiff wished to reopen this matter, he shall notify the Court in writing within thirty (30) days, and include either a complete, signed IFP application (with a certified six-month prison account statement) or payment of the full filing and administrative fee. (D.E. No. 3 ("April 21, 2025 Order") at 1, 3). On July 14, 2025, the Court entered an Order noting that the copy of the April 12, 2025 Order and the blank IFP application form mailed to Plaintiff were returned as undeliverable because Plaintiff's name and number did not match and that

---

[3]     *See Burns v. Morton*, 134 F.3d 109, 112–13 (3d Cir. 1998) (indicating that a *pro se* prisoner's submission is generally deemed filed at the moment he delivers it to prison officials for mailing to the district court).

Plaintiff filed a letter stating that the incorrect SBI number was listed on a document he received from the Clerk of Court.  (D.E. No. 6 at 2).  Accordingly, the Court ordered the Clerk of Court to correct Plaintiff's SBI number, and Plaintiff was provided thirty (30) days to submit his complete IFP application or pay the full fee.  (*Id.* at 3).

On or about August 1, 2025, Plaintiff filed the pending Motion to Reopen and IFP Application (which includes a certified six-month prison account statement).  (D.E. Nos. 7 & 8).

## II.    STANDARDS OF REVIEW

Pursuant to 28 U.S.C. § 1915(a), the District Court may authorize a plaintiff to proceed IFP and order a complaint to be filed without requiring the prepayment of filing fees.  The statute "is designed to ensure that indigent litigants have meaningful access to the federal courts."  *Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).  However, to guard against potential "abuse" of "cost-free access to the federal courts," *id.* (citing *Denton v. Hernandez*, 504 U.S. 25, 29 (1992)), § 1915(e) empowers the District Court to dismiss an IFP complaint if it "is frivolous or malicious" or "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e).

Thus, the Court must conduct a two-step analysis when considering a complaint filed with an IFP application: "First, the Court determines whether the plaintiff is eligible to proceed under 28 U.S.C. § 1915(a) . . . . Second, the Court determines whether the Complaint should be dismissed as frivolous or for failure to state a claim upon which relief may be granted, as required by 28 U.S.C. § 1915(e)."  *Archie v. Mercer Cnty. Courthouse*, No. 23-3553, 2023 WL 5207833, at *2 (D.N.J. Aug. 14, 2023) (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)).

Under the first step, § 1915(a) requires Plaintiff to submit "an affidavit stating all income and assets, the plaintiff's inability to pay the filing fee, the 'nature of the action,' and the 'belief

7

that the [plaintiff] is entitled to redress.'" *Martinez v. Harrison*, No. 23-3513, 2023 WL 5237130, at *1 (D.N.J. Aug. 15, 2023) (alteration in original) (quoting 28 U.S.C. § 1915(a)).  Prisoners are additionally required to submit "a certified copy of [a] trust fund account statement . . . for the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2).

Second, district courts must review complaints in civil actions in which a convicted prisoner or pretrial detainee is proceeding IFP, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see id.* § 1915A(a), or brings an action with respect to prison conditions, *see* 42 U.S.C. § 1997e(c).  District courts may *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1).

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B), 1915A(a), or 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010).  A court properly grants a motion to dismiss under Rule 12(b)(6) "if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3rd Cir. 1986)).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "'sufficient factual matter' to show that the claim is facially plausible."  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under Federal Rule of Civil Procedure 8, a complaint's claims must be supported by "a short and plain statement . . . showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(2)–(3). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The complaint must set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citations omitted); *see also Dist. Council 47 v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986) (stating that the complaint must contain sufficient facts to put the defendants on notice permitting them to frame an answer to the plaintiff's allegations). A complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). While courts liberally construe *pro se* pleadings, *pro se* litigants still are required to allege sufficient facts to support a claim and to comply with the pleading requirements of Rule 8. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

## III. DISCUSSION

Under the first step of the two-step analysis, the Court authorizes leave to proceed without prepayment of fees and **GRANTS** Plaintiff's Motion to Reopen and IFP Application. Accordingly, the Court proceeds to the second step and determines whether the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

The Court liberally construes the Complaint as alleging the following federal claims: (i) a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5, against Defendants in their official capacities for injunctive and declaratory relief; (ii) claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of Plaintiff's right to free exercise of his religion under the First Amendment to the United States Constitution against Defendants in their official capacities for injunctive and declaratory relief and in their individual capacities for damages; and (iii) Section 1983 claims for alleged violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution against Defendants in their official capacities for injunctive and declaratory relief and in their individual capacities for damages.[4]

## A.    RLUIPA

"By passing RLUIPA, Congress determined that prisoners . . . have a strong interest in avoiding substantial burdens on their religious exercise, even while confined." *Ramirez v. Collier*, 595 U.S. 411, 433 (2022).  The statute "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

The relevant provision of RLUIPA states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the

---

[4]    The Court does not construe the Complaint as raising an RLUIPA claim for damages or a claim against Defendants in their individual capacities. *See Landor v. La. Dep't of Corr. & Pub. Safety*, No. 23-1197, --- S. Ct. ---, 2026 WL 1791277, at *3–11 (June 23, 2026) (concluding that RLUIPA does not permit "plaintiffs to sue nonconsenting state employees in their private capacities for damages"); *Abdul-Aziz- v. Lanigan*, No. 17-2806, 2025 WL 3006731, at *5 n.3 (D.N.J. Oct. 28, 2025) ("RLUIPA did not abrogate sovereign immunity with respect to money damages; money damages are unrecoverable where a plaintiff sues a state entity or a state official in their official capacity under RLUIPA." (citing *Sossamon v. Texas*, 563 U.S. 277, 293 (2011))); *Lyles v. Brantley*, No. 23-1034, 2023 WL 2483633, at *3 (D.N.J. Mar. 20, 2023) (stating that RLUIPA applies only to state employees acting in their official capacities but not their individual capacities).

government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1. RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) (citing § 2000cc–1). "RLUIPA effectively codified strict scrutiny as the rule of decision for religious free exercise cases brought by prisoners against institutions that receive federal funding." *Cole v. Collier*, 117 F.4th 326, 329 (5th Cir. 2024).

"[T]o state a claim under RLUIPA, a plaintiff must allege (1) an unreasonable and substantial burden on a (2) sincerely held (3) religious belief." *Santiago v. Elchebli*, No. 20-0650, 2021 WL 4473179, at *5 (D.N.J. Sept. 30, 2021). A substantial burden exists where either: (i) an adherent is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates or abandoning one of the precepts of his religion in order to receive a benefit; or (ii) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. *See id.* (citing *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007)).

The Court concludes that Plaintiff's RLUIPA claim survives screening. First, Plaintiff plausibly alleges that Defendants' conduct has imposed a substantial burden on the exercise of his religion. Liberally construing his Complaint, Plaintiff claims that he is Native American and practices Native American religious traditions; despite his and his wife's best efforts and the

11

applicable state protocols, or "IMPs," Defendants refused to release (or, having received contemporaneous notice of the problem, acquiesced in the ongoing failure to release) to Plaintiff (through Wilcox) a package (which was addressed to Plaintiff c/o Wilcox) containing several religious items his wife purchased, ordered, and shipped to the facility pursuant to the IMPs and Wilcox's instructions; instead, the package was treated as contraband and the items were touched by a female guard in violation of the IMPs and Native American religious traditions; and, as a result, Plaintiff, is unable to pray and conduct Native American religious ceremonies. (*See* Compl. at 3–11). "At this early state of the litigation, [Plaintiff] has met his minimal burden to plausibly allege that these deprivations have substantially burdened his religious exercise." *Lyles*, 2023 WL 2583633, at *4 ("Lyle has alleged that Brantley has prevented him from engaging in seven activities that are necessary to his Native American ceremonial religious practices." (quoting and citing Lyle's complaint which alleged a "deprivation of the right to wear a religious head covering, 'smudge,' use 'kinnikinnick,' use a 'medicine bag,' prayer pipe, dance during services, and attend the 'Sweat Lodge'" (quotation modified))).

Accordingly, Plaintiff's RLUIPA claim against Defendants in their official capacities for injunctive and declaratory relief may proceed at this juncture.

### B. Section 1983[5]

#### 1. Compensatory Damages

42 U.S.C. § 1997e, entitled "[l]imitation on recovery," provides in relevant part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of

---

[5] To state a claim for relief under Section 1983, a plaintiff must allege: (i) that the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived the plaintiff of a federally secured right. *See Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

physical injury." 42 U.S.C. § 1997e(e). The Third Circuit has interpreted this provision to bar recovery of compensatory damages in such suits in the absence of a showing of physical injury. *See Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000). Plaintiff's Complaint contains no allegations of any physical injury. Accordingly, the Court **DISMISSES** *without prejudice* Plaintiff's Section 1983 claims against Defendants in their individual capacities for compensatory damages for failure to state a claim. However, § 1997e(e) does not foreclose these claims for either nominal or punitive damages. *See Brandt v. Cirillo*, No. 22-3752, 2023 WL 157431, at *4 (D.N.J. Jan. 10, 2023). Accordingly, the latter shall proceed.

### 2.    Free Exercise of Religion

"Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000) (citation modified). There are two threshold requirements for a prisoner to state a First Amendment free exercise claim: (1) that the prisoner has a sincerely held belief; and (2) that belief is "religious in nature, in the claimant's scheme of things." *Id.* at 51 (citation modified). Furthermore, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* (discussing *Turner v. Safely*, 482 U.S. 78, 89 (1987)). When a prison policy impinges on a prisoner's free exercise of his religion, courts must weigh four factors to determine whether the impinging policy was reasonable: (i) whether there is a valid, rational connection between the policy and the legitimate governmental interest used to justify the policy; (ii) whether the inmate retains an alternative means of exercising the impinged right; (iii) the costs imposed by accommodating the right asserted; and (iv) whether there are alternatives to the impinging policy

that would fully accommodate the prisoner's right with little cost to valid penological interests. *See id.*

"At this early stage of litigation, [Plaintiff] has plausibly alleged a violation of his right to the free exercise of religion sufficient to state a claim for relief under § 1983." *See Lyles*, 2023 WL 2583633, at *4. Plaintiff plausibly alleges that he has a sincerely held religious belief and that he has been prevented from exercising his religion. (*See* Compl. at 7 ("I told him [Wilcox] I'm Native American and that I [would] like to order my sacred spiritual items so I can perform my Native American religious ceremonies."), *id.* 11 (alleging that, because of Defendants' conduct, he has not "able to pray"); *see also Lyles*, 2023 WL 258363, at *4 ("Specifically, he has alleged his beliefs are sincerely held and religious in nature and that he has been prevented from engaging in Native American religious practices, 'as required for [his] religious practice.'" (alteration in original) (citations omitted)). Furthermore, Plaintiff alleges that Defendants' conduct violated state protocols or IMPs, evidently suggesting that there is no valid connection between their conduct and a legitimate governmental interest and that the costs imposed by accommodating Plaintiff would be insubstantial. (*See generally* Compl.). "Of course, many factual issues, not suitable for consideration at this stage, may remain." *Lyles*, 2023 WL 258363, at *4. For now, however, Plaintiff is permitted to proceed past this initial screening stage with his Section 1983 free exercise claims against Defendants in their official capacities for injunctive relief and in their individual capacities for non-compensatory monetary damages.[6]  *See id.* ("Specifically, he has

---

[6]      A civil rights plaintiff must plausibly establish that each named defendant was personally involved in the alleged constitutional violation to state an individual-capacity claim under Section 1983 for monetary relief. *See Parkell v. Danberg*, 833 F.3d 313, 330–32 (3d Cir. 2016); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Plaintiff adequately alleges for screening purposes that Wilcox ("Supervisor of Chaplaincy") and Horsey ("Mail Room SCPO Officer"), directly participated in processing and withholding the package with his religious items. (*See* Compl. at 3–4, 11–13). Regarding the other four defendants, who allegedly hold administrative or supervisory positions at GSCF, Plaintiff likewise alleges sufficient facts indicating that Sgt. Jones ("Mail Room Sgt."), Milligam ("Asst Superintendent"), Renaud ("Administration Assistant"), and Henderson ("Administration")

14

alleged his beliefs are sincerely held and religious in nature, and that he has been prevented from engaging in Native American ceremonial practices, "as required for [his] religious practice." (alteration in original) (citations omitted)).

### 3.        Equal Protection

Plaintiff indicates that he is the victim of discriminatory treatment because he is a Native American adherent of Native American religious traditions, e.g., he "sees [that] every other religious group[] [can] pray." (Compl. at 1). To make out an equal protection claim, Plaintiff must show that he was treated differently from other similarly situated persons and that this different treatment was the result of intentional discrimination based on a protected ground such as a race or religion. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Furthermore, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Plaintiff does not provide facts plausibly indicating that he was intentionally treated differently from any similarly situated individual because he is a Native

---

possessed contemporaneous knowledge of, and acquiesced in, the conduct to allow such claims to proceed past *sua sponte* screening. *See McCoy v. Scott*, No. 23-21272, 2024 WL 3580662, at *2 (D.N.J. July 29, 2024) (stating that a supervisor's personal involvement may be shown through specific allegations of knowledge and acquiescence); *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000) (stating that knowledge includes contemporaneous knowledge of the offending incident); *Haar v. CFG Health Servs., LLC*, No. 22-7595, 2024 WL 4880349, at *7 (D.N.J. Nov. 25, 2024) (indicating that grievances are generally insufficient to establish supervisory liability absent a plausible allegation that the supervisor had contemporaneous knowledge of the incident and either directed or acquiesced in it); (Compl. at 10–11 (alleging that, when Plaintiff received "the inmate receipt contraband seizure," he wrote a handwritten appeal to Milligam explaining the IMPs and the prohibition against females touching Native American sacred items, and Renaud "responded talking package procedures when in fact they should be following the Native American Package IMP practices").

As to Plaintiff's Section 1983 free exercise claim for injunctive and declaratory relief against the Defendants named in their official capacities, "it is well established that prison administrators may be named as defendants for claims seeking injunctive relief even where they had no personal involvement in the alleged wrongs" if such defendants could potentially provide the prospective relief the plaintiff seeks. *See Rodrigues v. Special Treatment Unit*, No. 19-14708, 2024 WL 5264262, at *5 n.4 (D.N.J. Dec. 31, 2024) (first citing *Megginson v. Caldwell*, No. 15-7161, 2025 WL 13229496, at *5 (D.N.J. Dec. 4, 2015); and then citing *Mitchell v. Jones*, No. 21-0131, 2022 WL 2657365, at *6 (W.D. Mar. 9, 2022)).

American adherent of Native American religious traditions. In fact, he fails to identify any allegedly similarly situated individual in his Complaint. Accordingly, the Court **DISMISSES** *without prejudice* Plaintiff's Section 1983 equal protection claims for failure to state a claim.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's IFP Application and his Motion to Reopen. The Court **DISMISSES** *without prejudice* Plaintiff's Section 1983 claims against Defendants in their individual capacities for compensatory damages for failure to state a claim. It also **DISMISSES** *without prejudice* Plaintiff's Section 1983 equal protection claims against Defendants for failure to state a claim. The Court permits the following claims to proceed: (i) the RLUIPA claim against Defendants in their official capacities for injunctive and declaratory relief; (ii) the Section 1983 free exercise claim against Defendants in their official capacities for injunctive and declaratory relief; and (iii) the Section 1983 free exercise claim against Defendants in their individual capacities for non-compensatory damages.

An appropriate Order follows.

**Dated:** June 30, 2026
s/ <em>Esther Salas</em><br>
<strong>Esther Salas, U.S.D.J.</strong>